## MARTIN vs. CURTIS & AL.

APPEAL from the court of the sixth district.

MARTIN, J. delivered the opinion of the court. The plaintiff claims certain slaves in the possession of the defendants. They pleaded the general issue, prescription and title under Benson, whom they called in warranty.

Benson alleged that the plaintiff never had possession of the slaves under the sale from Wallace, by virtue of which he claims them—that he released all his right to Wallace, who sold the slaves to him, and that he and his vendee, the defendants, have possessed them upwards of five years—that Wallace's sale to the plaintiff was a simulated one.

The plaintiff had a verdict and judgment, and the defendants appealed.

The documents produced are,

1. Wallace's sale of the slave sued for, to the plaintiff, March 21, 1817.

2. Benson's to the defendants, Nov. 30, 1818.

3. Wallace's sale to Benson, July 3, 1818.

The sale of Wallace to the plaintiff, is a *vente à remere*, a sale with a clause reserving to the vendee the power of redeeming.

That of Wallace's to Benson recites that of

West'n District, *Sept.* 1824.

MARTIN *vs.* CURTIS & AL.

The acknowledgments of the vendor in the deed of sale, are evidence against a subsequent vendee.

Wallace to the plaintiff, and Benson promises to procure the plaintiff's release and re-conveyance.

Our attention is first directed to a bill of exceptions taken by the defendants' counsel to the refusal of the district judge to charge the jury, that "in law, the acknowledgment in the "conveyance from Wallace to the plaintiff, "that the price of the negroes was paid down, "was no proof against Benson that such a pay-"ment was made."

We think the district judge was correct. Benson was Wallace's vendee, and must be bound by the acts of his vendor, in regard to the thing sold.

The first plea of the defendant, the general issue, is unsupported. The plaintiff proves his right, by the production of the deed of sale of Wallace, under which the defendants claim. This deed is a notarial one, and the identity of the slaves is admitted in the statement of facts.

The plea of prescription, i. e. that the defendants possessed five years, is unsupported—their title bears date Nov. 30, 1818, and the citation in the present suit appears to have been served on the 6th of November, 1823.

The deed of Benson is posterior to that of

the plaintiff, and recites the conveyance of his vendor (of the negroes sold,) to the plaintiff, and he accepts the sale on the covenant of his vendor to produce a conveyance or release from the plaintiff. This does not appear to have ever been obtained.

Benson pleads, 1. That the plaintiff never had possession of the slaves sold. The plaintiff's deed expressly sets forth that the slaves were *delivered* to him. The statute provides that the tradition or delivery of slaves takes place by the mere consent of the parties, when the sale mentions that the things were delivered to the buyer. *C. Code*, 350, *art.* 28. It therefore follows, that the plaintiff had that tradition or delivery, which transferred the vendor's right.

Benson, who when he purchased the slaves from Wallace, was informed by a clause in his deed, that the negroes he was purchasing were already sold to the plaintiff, and was willing to trust Wallace on his covenant that he would procure the plaintiff's re-conveyance or release, cannot complain that the plaintiff, by permitting Wallace to possess and have the slaves as his own, enabled him to defraud and impose upon him the second vendee; for the

West'n District,
*Sept.* 1824.

MARTIN
*vs.*
CURTIS & AL.

declaration of Wallace, contained in the sale to Benson, that the title to the slaves was in the plaintiff, precludes the idea of his exercising any fraud or imposition.

The statement of facts shews that the plaintiff permitted Wallace to keep the negroes after the sale. The evidence of fraud which this complaisance presents, if it could be invoked by Benson, who bought with his eyes open, and to whom every thing was disclosed, must vanish, when the perusal of Wallace's deed to the plaintiff shews that, although the former was secured by an *actual bona fide sale*, yet the intention of vendor and vendee was that the slaves should be re-conveyed, as soon as the former availed himself of the right of redemption, reserved to him by a clause in the deed.

Admitting that to a purchaser without notice, the circumstance, that after the sale was completed, by a *legal* tradition, the vendor was permitted to retain the slaves, and remain the ostensible owner, might give some claim to a party, deceived thereby—yet Benson, who had legal *notice* by the notarial, sale to the plaintiff, and to whose immediate predecessor notice and knowledge were given by Wallace, cannot possibly complain.

Benson's deed is not such a title as may enable him to prescribe under it, for he knew his vendor had no title.

There is no evidence of the alleged simulation.

The case, of *Price* vs. *Curtis* & *al.* 6 *Martin.* 420, and *Copelly* vs. *Duverges,* 11 *id.* 641, have been insisted on. But in the first, the deed of sale did not state *any delivery*—and the latter was that of a sale anterior to the code—the conveyance was of land, not of slaves.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed, with costs.

*Thomas* for the plaintiff. *Bullard* for the defendants.